UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **18-20403-CR-WILLIAMS**/TORRES

18 U.S.C. § 371

UNITED STATES OF AMERICA

vs.

**DERYL LEON,**

                      **Defendant.**
_____/



FILED by _____ D.C.
MAY 15 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S. D. of FLA. – MIAMI

## INFORMATION

The United States Attorney for the Southern District of Florida charges that:

### General Allegations

At all times material to this Information:

1. Defendant DERYL LEON, age 39, was a resident of Miami, Florida.

2. LEON operated companies in Florida known as Skinny Crow Music, Inc. ("Skinny Crow") and Catan Trading, Inc, ("Catan"), which were both involved in the buying, collecting, exporting, and selling of used cooking oil and other liquid products.

3. LEON became experienced in the logistics of handling the transportation of liquid products throughout the United States and internationally, including loading, trucking, shipping, storage, and brokering many types of liquid product.

4. In 2011, LEON was introduced to JOHN DOE-1, who owned and was the chief executive officer of COMPANY-1 in Utah. COMPANY-1 described itself as "the Intermountain West's largest producer of environmentally friendly Biodiesel." LEON agreed to find and buy biodiesel for COMPANY-1 and ship it to India.

5. LEON learned that JOHN DOE-1 shared ownership of COMPANY-1 with his brother, JOHN DOE-2.

6. JOHN DOE-2 also owned a related company called COMPANY-2 that engaged in the buying and selling of liquid fuels.

7. In conducting business with and for COMPANY-1 and COMPANY-2, LEON met JOHN DOE-1 and JOHN DOE-2's mother, MOTHER DOE, who was the "Special Projects Manager" at COMPANY-1.

8. LEON also met JOHN DOE-1's wife, DOE-1's WIFE, who was the "IRS Regulatory Permit Specialist" at COMPANY-1, as well as many other employees.

9. Between September 2011 and May 2013, LEON performed logistics services for COMPANY-1 and COMPANY-2 in a number of projects involving the acquisition, storage, transportation, and sale of liquid products. During this time period, at the request of the DOES, LEON created numerous false documents and numerous fake documents regarding the liquid products he handled and the services he rendered on behalf of COMPANY-1 and COMPANY-2.

Law and Industry

10. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by taxpayers, including both individuals and corporations, as well as paying claims for refundable fuel tax credits.

11. The Energy Independence and Security Act of 2007 directed the IRS to issue regulations and administer tax credits to ensure an increase in the amount of renewable fuel through a taxpayer-funded incentive program.

12. The IRS allowed renewable fuel tax credits for biodiesel mixture fuel, renewable diesel mixture, alternative fuel, and alternative fuel mixture.

Biodiesel Mixture Credit

13. One type of renewable fuel was biodiesel. Biodiesel was fuel derived from biomass that met certain IRS and EPA requirements. Biomass was defined as any organic material other than oil, natural gas or coal. The law required biodiesel to be mixed with diesel fuel to qualify for this fuel tax credit. The Biodiesel Mixture Credit entitled taxpayers to claim a refundable tax credit for every gallon of biodiesel that was used in producing a qualifying biodiesel mixture that was sold as a fuel or used as a fuel by the taxpayer in a trade or business. The credit was $1.00 per gallon. The taxpayer claiming this credit was required to attach a Certificate for Biodiesel from a registered producer certifying that the biodiesel in the mixture met IRS and EPA requirements.

Alternative Fuel Credit

14. Another type of renewable fuel was called alternative fuel. Alternative fuel was also fuel derived from biomass, but this fuel did not meet the IRS and EPA requirements for biodiesel. Alternative fuel included several categories/forms, one of which was called "liquid fuel derived from biomass." The Alternative Fuel Credit entitled registered taxpayers to a refundable .50 cent tax credit for every gallon of alternative fuel sold by the taxpayer for use as fuel in a motor vehicle or motorboat, or for use as a fuel in aviation, or so used by the taxpayer. No certificate was required to be attached by the taxpayer to claim the credit.

Toll Processing

15. While the IRS registered taxpayer was prevented from letting others use its registration, the taxpayer could contract with others in the biofuel industry to perform "toll

processing" of its feedstock or other products into renewable fuel products such as biodiesel. "Toll processing" was defined as performing a specific service on the product of a client. Among other things, LEON signed false documents stating that his company Skinny Crow and/or Catan was purportedly performing "toll processing" on COMPANY-1's products.

## CONSPIRACY
## (18 U.S.C. § 371)

16. From in or about 2013, and continuing up to 2016, or the date of this Information, in the Southern District of Florida, the District of Utah, and elsewhere, the defendant

**DERYL LEON,**

together with others known and unknown to the United States Attorney and Assistant Attorney General, including the DOE co-conspirators described in paragraphs four through eight above, did unlawfully, voluntarily, intentionally, knowingly and willfully conspire, combine, confederate and agree to defraud the United States by deceitful and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and payment of refundable renewable fuel tax credits, including the biodiesel mixture credit, and the alternative fuel credit.

## OBJECT OF THE CONSPIRACY

17. It was an object of the conspiracy for the defendant and his co-conspirators and their respective businesses to create the appearance that their respective businesses were involved in sufficient biodiesel business activity to support COMPANY-1 and COMPANY-2's numerous false claims for refundable renewable fuel tax credits that they agreed COMPANY-1 and COMPANY-2 would file with the IRS.

## MANNER AND MEANS OF THE CONSPIRACY

18. The manner and means by which **DERYL LEON** and his co-conspirators would and did carry out the object of the conspiracy included the following:

(1) Co-conspirators purchased millions of gallons of biodiesel from others rather than producing it.

(2) Co-conspirators rotated or "rounded" the purchased product between facilities so as to make it appear that biodiesel and other renewable fuel products were being transported, processed, and sold.

(3) Co-conspirators exchanged or copied letterheads and invoices so that co-conspirators could create false documentation.

(4) Co-conspirators created, and caused others to create, fake, false, and fraudulent invoices and paperwork relating to fictitious purchases and sales of biodiesel.

(5) Co-conspirators prepared and filed false Forms 8849, Claims for Refunds of Excise Taxes, with the Internal Revenue Service.

(6) Co-conspirators cycled funds between bank accounts with their co-conspirators to make it appear that biodiesel and related products were being bought and sold.

(7) Co-conspirators falsely claimed that certain businesses were "toll processors" of biodiesel and other renewable fuel products on behalf of COMPANY-1 and/or COMPANY-2.

(8) Co-conspirators used "burner" phones, code-words, and other means to covertly communicate with co-conspirators.

(9) Co-conspirators exchanged documents in person or on thumb drives rather than through email or in "cyberspace."

(10) Co-conspirators made false statements to IRS revenue agents.

(11) Co-conspirators provided false documentation to IRS revenue agents.

(12) Co-conspirators split the proceeds from the fraudulent claims.

(13) Co-conspirators planned to obstruct the federal investigation into their conduct.

## OVERT ACTS

19. In furtherance of the conspiracy and to effect the object thereof, there was committed and caused to be committed by at least one of the co-conspirators herein, within the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

*The Westway Scheme*

(1) On or about July 8, 2013, **DERYL LEON** secured additional storage tanks in Texas to further the "rotation" of product aspect of their conspiracy.

(2) In or around July, 2013, **DERYL LEON** secured barges to transfer the product between storage tanks in Texas and later Louisiana.

(3) On or about June 17, 2013, the DOE co-conspirators contracted to buy approximately 5,100 metric tons (approximately 1,500,000 gallons) of biodiesel from a Canadian company;

(4) On or about July 22, 2013, **DERYL LEON** had COMPANY-1's first large purchase of biodiesel loaded into the storage tanks in Texas.

(5) On or about Monday July 22, 2013, **DERYL LEON** boarded a flight from Miami, Florida to Salt Lake City, Utah to meet with his co-conspirators to further the rotation project that was then underway.

(6) On or about Tuesday July 23, 2013, **DERYL LEON** met with JOHN DOE-1 and DOE-1's WIFE in Utah.

(7) On or about Tuesday July 23, 2013, JOHN DOE-1 informed **DERYL LEON** that they needed him to rotate product to make it appear that 100 million gallons of product had been sold because they intended to have COMPANY-1 make $100 million in fraudulent claims for renewable fuel tax credits with the IRS.

(8) On or about July 23, 2013, the DOE co-conspirators contracted to buy approximately 15,000 metric tons (approximately 3,900,000 gallons) of biodiesel from another foreign company.

(9) On or about Wednesday July 24, 2013, the Utah state holiday known as "Pioneer Day," **DERYL LEON** met with JOHN DOE-1 and other co-conspirators in Utah.

(10) On or about July 26, 2013, the DOE co-conspirators contracted to buy approximately 1,470,000 gallons of biodiesel from a domestic company.

(11) On or about July 29, 2013, DOE-1's WIFE prepared, and JOHN DOE-1 caused to be filed, a Form 8849 with the IRS.

(12) On or about July 29, 2013, DOE-1's WIFE sent to **DERYL LEON** via email a false and fake COMPANY-1 invoice #13-051-1 to Skinny Crow dated May 1, 2013.

(13) On or about August 1, 2013, in Miami, Florida, **DERYL LEON** prepared a spreadsheet detailing the gallons of product he was having rotated in Texas.

(14) On or about August 2, 2013, **DERYL LEON** shared the spreadsheet via email with some of the DOE co-conspirators so that they could continue to reconcile his rotation of product in Texas and Louisiana with the fraudulent Forms 8849, Claims for Refund, that the DOES were filing on behalf of COMPANY-1.

7

(15) On or about August 13, 2013, DOE-1's WIFE prepared, and JOHN DOE-1 caused to be filed, a Form 8849 with the IRS.

(16) On or about August 16, 2013, **DERYL LEON** prepared a false bill of lading indicating that Catan was selling biodiesel to JOHN DOE-2's foreign shell company COMPANY-3.

(17) On or about August 19, 2013, **DERYL LEON** and JOHN DOE-2 exchanged emails regarding sending by vessel approximately 3.4 million gallons of purchased product to Panama and back.

(18) On or about August 19, 2013, **DERYL LEON** secured storage tanks in Louisiana for COMPANY-2.

(19) On or about September 5, 2013, DOE-1's WIFE emailed to **DERYL LEON** a blank invoice.

(20) On or about September 5, 2013, **DERYL LEON** created a fake invoice from COMPANY-3, the shell company owned by JOHN DOE-2, indicating that COMPANY-3 was selling nearly 3,400,000 gallons of "B100" biodiesel to COMPANY-1.

(21) On or about September 5, 2013 DOE-1's WIFE prepared, and JOHN DOE-1 caused to be filed, a Form 8849 with the IRS.

(22) On or about January 21, 2014, JOHN DOE-2 transferred $17,055,389 from COMPANY-1 to **DERYL LEON'S** Catan bank account.

(23) On or about January 21, 2014, **DERYL LEON** transferred $17,055,389 from his Catan bank account to his Skinny Crow bank account, both located in Miami, Florida.

(24) On or about January 21, 2014, **DERYL LEON** transferred $18,853,481 from his Skinny Crow bank account in Miami, Florida back to COMPANY-1 in Utah.

(25) On or about February 11, 2014, **DERYL LEON** and the DOE co-conspirators shared and discussed the spreadsheet reconciling the rotated product with the fraudulent filings.

(26) In or about April 2014, an unindicted co-conspirator gave **DERYL LEON** a "burner" phone to carry-on conversations in voice and text with the DOE co-conspirators.

*2014 Cycling of Funds*

(27) On or about October 30, 2014, JOHN DOE-2 transferred $7,200,000 from COMPANY-1 to **DERYL LEON'S** Catan bank account in Miami, Florida.

(28) On or about October 30, 2014, **DERYL LEON** transferred $7,200,000 from his Catan bank account to his Skinny Crow company bank account, both located in Miami, Florida.

(29) On or about October 30, 2014, **DERYL LEON** transferred $7,191,025 from his Skinny Crow bank account in Miami, Florida back to COMPANY-1.

(30) On or about February 11, 2015, JOHN DOE-1 filed and caused to be filed a Form 8849 with the IRS for COMPANY-1.

*2015 Cycling of Funds*

(31) On or about April 10, 2015, JOHN DOE-2 transferred $45,051,000 from COMPANY-1 to **DERYL LEON'S** Catan bank account in Miami, Florida.

(32) On or about April 10, 2015, **DERYL LEON** transferred $45,051,000 from his Catan bank account to his Skinny Crow bank account, both located in Miami, Florida.

(33) On or about April 10, 2015, **DERYL LEON** transferred $44,953,000 from his Skinny Crow bank account in Miami, Florida back to COMPANY-1.

(34) On or about April 23, 2015, JOHN DOE-2 transferred $44,381,890 from

COMPANY-1 to **DERYL LEON'S** Catan bank account in Miami, Florida.

(35)   On or about April 23, 2015, **DERYL LEON** transferred $44,381,890 from his Catan bank account to his Skinny Crow bank account, both located in Miami, Florida.

(36)   On or about April 23, 2015, **DERYL LEON** transferred $44,335,130 from his Skinny Crow bank account in Miami, Florida back to COMPANY-1.

*2015-16 Cycling of Funds*

(37)   On or about December 11, 2015, JOHN DOE-2 transferred $960,000 from COMPANY-2 to **DERYL LEON'S** Xena company bank account in Miami, Florida.

(38)   On or about December 15, 2015, **DERYL LEON** transferred $960,000 from his Xena company bank account to a third party bank account, both in Miami, Florida.

(39)   On or about December 16, 2015, **DERYL LEON** caused to be transferred $955,000 from that third party bank account in Miami, Florida back to COMPANY-2.

(40)   On or about January 20, 2016, JOHN DOE-2 transferred $1,100,000 from COMPANY-1 to **DERYL LEON'S** Catan bank account in Miami, Florida.

(41)   On or about January 20, 2016, **DERYL LEON** transferred $1,100,000 from his Catan bank account to his Skinny Crow bank account, both located in Miami, Florida.

(42)   On or about January 20, 2016, **DERYL LEON** transferred $1,070,000 from his Skinny Crow bank account in Miami, Florida back to COMPANY-1.

(43)   On or about January 20, 2016, JOHN DOE-1 filed and caused to be filed a Form 8849 with the IRS for COMPANY-1.

(44)   On or about February 4, 2016, JOHN DOE-2 filed and caused to be filed a Form 8849 with the IRS for COMPANY-2.

*The Planned Cover Up*

(45) On or about February 4, 2016, JOHN DOE-1 called **DERYL LEON** to alert him that the IRS was planning to raid his and his family's companies.

(46) On or about February 10, 2016, JOHN DOE-1 called **DERYL LEON** to warn him to prepare because the IRS had raided his and his family's companies.

(47) On or about February 28, 2016, JOHN DOE-1 met with **DERYL LEON** in Miami, Florida.

(48) On or about March 2, 2016, JOHN DOE-1 had MOTHER DOE ship to **DERYL LEON** in Miami, Florida another "burner" phone.

(49) On or about March 10, 2016, MOTHER DOE emailed to **DERYL LEON** in Miami, Florida a video entitled "Don't Talk To Cops."

All in violation of Title 18, United States Code, Section 371.

_____
BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

_____
RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
TAX DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
Thomas A. Watts-FitzGerald
Assistant United States Attorney

_____
Richard M. Rolwing
Special Attorney, Tax Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| DERYL LEON | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| **Defendant.** _____ / | **Superseding Case Information:** |

**Court Division**: (Select One)

_X_ Miami     ___ Key West
___ FTL       ___ WPB     ___ FTP

New Defendant(s)         Yes ___  No ___
Number of New Defendants ___
Total number of counts   ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    NO
   List language and/or dialect _____

4. This case will take    0    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)

   I    0 to 5 days        X(PLEA)     Petty       ___
   II   6 to 10 days       ___         Minor       ___
   III  11 to 20 days      ___         Misdem.     ___
   IV   21 to 60 days      ___         Felony       X
   V    61 days and over   ___

6. Has this case been previously filed in this District Court?   (Yes or No)   NO
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   NO
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)   NO

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   Yes ___    No _X_

_____
Thomas Watts-FitzGerald
Assistant United States Attorney
Florida Bar No.: 0273538

\*Penalty Sheet(s) attached                                           REV 5/3/17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: DERYL LEON

**Case No**: _____

Count #1:

Conspiracy

Title 18, United States Code, Section 371

\* **Max. Penalty**: Five (5) years imprisonment

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
| DERYL LEON | ) |
|  | ) |
| *Defendant* | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*